In the Matter of the **Estate of**
Manuel Fausto **Aldan**, Deceased.
Appeal No. 95-028
Civil Action No. 90-490
February 13, 1997

Argued and Submitted November 7, 1996

Counsel for Appellants: Kenneth L. Govendo, Saipan.

Counsel for Appellee: Richard W. Pierce, Saipan. (White, Pierce, Mailman & Nutting)

BEFORE: VILLAGOMEZ and ATALIG, Justices, and MACK, Special Judge.

VILLAGOMEZ, Justice:

¶1    Appellants, Domitilia C. Govendo and Thomas J. Camacho ("appellants") appeal from the probate court's distribution of Manuel Fausto Aldan's ("Manuel") estate. They also appeal from the order that Josepha A. Fields' ("administratrix") attorney's fees expended in *Cabrera v. Cabrera*,[1] be charged on a pro rata basis to their share of the estate.
      We have jurisdiction under 1 CMC § 3102(a).

### ISSUES AND STANDARDS OF REVIEW

¶2    1. Whether the probate court erred in distributing

---

[1] *Cabrera v. Cabrera*, 3 N.M.I. 1 (1992).

one-half of Manuel's land to his heirs and the other half to the heirs of his spouse, Cecilia C. Aldan ("Cecilia"). How the estate of an intestate decedent is to be distributed is a question of law which we review de novo.[2]

¶3    2.  Whether the probate court erred in granting attorney's fees and costs incurred by the administratrix in another case and charging them to the estate. We review the grant of attorney's fees for manifest error.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Manuel died intestate on March 21, 1971. His wife, Cecilia, died eight months later in 1972. A petition to probate his estate was filed by the administratrix. The administratrix listed the legitimate children of Manuel which includes herself, Maria Aldan Cabrera, Consolacion Aldan Reyes, and Antonio C. Aldan as sole heirs of Manuel. The appellants filed a claim against the estate asserting that they are children of Manuel and are entitled to an equal share of the estate. The administratrix denied the claim.

¶5    The probate court ruled that the appellants are children and heirs of Manuel. The administratrix appealed that ruling and this Court affirmed. Upon remand, the administratrix petitioned for final distribution of the estate proposing that Manuel's land be divided one-half to Manuel's heirs and the other half to Cecilia's heirs. The appellants opposed the administratrix's proposal arguing that it was improper, and that the land should be divided equally among Manuel's heirs.

¶6    The probate court found that Manuel acquired in his name parcels E.A. 133, E.A. 837, A.H. 248, 015 H 26, and 005 H 28 during his marriage to Cecilia.[4] The court concluded that these lands are marital property.[5]

¶7    On August 8, 1995, the probate court ruled that one-half of the estate be given to Manuel's heirs and the other half to Cecilia's heirs. In addition, the court awarded attorney's fees and costs expended by the administratrix in *Cabrera v. Cabrera*[6] chargeable on a pro rata basis to the appellants' share of Manuel's estate. The court held that the administratrix's intervention in *Cabrera* benefitted Manuel's estate by preserving 20,000 square meters of real property. The appellants timely appealed.

---

[2] *Estate of Jose P. Cabrera*, 2 N.M.I. 195, 203 (1991).

[3] *Estate of Barcinas*, 2 N.M.I. 437, 449 (1992).

[4] Excerpts of Record at 27.

[5] Citing *Estate of Deleon Guerrero*, 1 N.M.I. 301, 306 (1990), *reh. den.*, 1 N.M.I. 325 (1990).

[6] *Cabrera*, 3 N.M.I. 1 (1992).

## DISCUSSION

**1. Whether the probate court erred in distributing one-half of Manuel's land to his heirs and the other half to Cecilia's heirs.**

¶8    ■ Since Manuel died before the effective date of the Commonwealth Probate Code,[7] the estate property is subject to distribution pursuant to Title 13 of the Trust Territory Code. 8 CMC § 2102 (Supp. 1984). However, since Title 13 does not provide for distribution of the estate of a person of Chamorro descent who died intestate, we resort to Chamorro custom for guidance. Section 102 of Title 1 of the Trust Territory Code mandates that the customs of the Trust Territory inhabitants are to have full force and effect of law where not in conflict with other laws.[8] We must first determine what the applicable Chamorro land custom was in 1971 and then determine if the land is subject to distribution under such custom.

¶9    ■ In 1971, real property purchased by a husband, with the husband's money during the marriage, and where the certificate of title listed only the husband's name, such property belonged to the husband.[9] In *Deleon Guerrero*, the court stated that:

> This is the one piece of property which would come the closest to being community or spousal property if such a doctrine prevailed in the Commonwealth. It was purchased during the marriage and lifetime of Mariana. Yet, the certificate of title lists only Francisco as the owner. Ostensibly, the funds came from the assets of Francisco since there is no evidence of Mariana having any assets of her own. To be sure, she worked with Francisco, kept books, collected rent, and labored to build up the value of the property owned by Francisco. But as noted above, these acts, without statutory authority, vest no ownership in the real property of Francisco.[10]

---

[7] The Probate Code became effective February 15, 1984. *See* 8 CMC § 2102 (Supp. 1984).

[8] 1 TTC § 102. The laws listed in 1 TTC § 101, with which custom may not conflict, are: (1) the Trusteeship agreement; (2) United States laws in effect in the Trust Territory; (3) Trust Territory laws and their amendments; (4) District Orders and Emergency District Orders; (5) Trust Territory legislation; and (6) Municipal Ordinances. 1 TTC § 101.

[9] *Estate of Deleon Guerrero*, Civ. No. 87-295, slip op. at 6 (N.M.I. Super. Ct. Oct. 26, 1989).

[10] *Id.*

¶10 In the appeal of *Deleon Guerrero*, the administratrix argued that the land purchased during the marriage was marital property. Therefore, the estate of Deleon Guerrero's wife owned half interest in the land, which would descend exclusively to her heirs.[11] One of the claimants was an illegitimate son of Deleon Guerrero. The administratrix in that case, as did the administratrix in this case, proposed to split the lands between the estate of Deleon Guerrero and the estate of his wife, so that the share of the illegitimate son would be reduced, and the legitimate children would acquire more. We found no legal basis for distributing the estate in that manner in that case, and we find none in this case.

¶11 In addition, in *Palacios v. Coleman*, the court noted that when the property descends to the children, there is a corresponding custom which requires the children to support their widowed mother during her lifetime.[12] This requirement puts the burden on the children, who receive the father's land, to provide the care and support that the father previously gave to the mother.

¶12 The probate court decided that "*Deleon Guerrero* must be read in the light of the prohibition against sex discrimination embodied in Article I, § 6 of the Commonwealth Constitution and *Ada v. Sablan*."[13] The court reasoned that since it was determined by this Court in *Deleon Guerrero*[14] that all property vested in the husband when the wife died, it is only fair that all property vested in the wife when the husband died. The court concluded that not to do so would result in sex discrimination against Cecilia, in violation of the CNMI Constitution and the principle of *Ada*.

¶13 This analysis cannot stand under the facts of this case. First, nowhere in our analysis of *Deleon Guerrero* did we suggest or imply that Chamorro custom provides for reciprocal application as between surviving husband and wife. Second, *Ada* involves a divorce between two living spouses in 1990. It does not touch upon the distribution of a deceased father's estate in the early 1970's. Third, in 1971, the Commonwealth Constitution did not exist. Although the Trust Territory statutes provided for equal protection of the law in 1971, the Trust Territory High Court had not interpreted such statute as it related to the Chamorro custom of land being acquired and owned by the father during marriage.

¶14 After the probate court ruled that upon Manuel's death all property vested in Cecilia, it faced the problem of what to do with Manuel's two children born out of wedlock who are not heirs of Cecilia. In its memorandum decision and order of August 8, 1995, the court reaffirmed its May 25, 1995, determination that reciprocal application of *Deleon Guerrero* in this case still stand.[15] However, the court, concerned for equal protection for the out-of-wedlock children, ruled that upon Cecilia's death eight months later, half of her lands were divested from her ownership and were returned to the estate of Manuel. Thus, after Manuel's estate has re-acquired one-half of the lands and Cecilia's estate retains the other half, the two sets of lands are to be equally distributed among their respective heirs. This is plausible, but not legally tenable. There is no factual, customary or legal basis for vesting Cecilia with all the lands, then divesting her with half of it upon her death.

¶15 The probate court, in its decision to divest half of Cecilia's land ownership and return it to Manuel's estate, relied on *Ada*, Spoehr [Spoehr, SAIPAN: THE ETHNOLOGY OF A WAR DEVASTATED ISLAND (Chicago Natural History Museum, Fieldiana: Anthropology, vol. 41, 1954)], and U.S. statutory precedents. The probate court reasoned that since this Court had fashioned a marital property "common law" in *Ada* in 1990, it could also fashion an intestate succession "common law" for 1972 in the instant case. Thus, the court ruled that "at Cecilia's death, the marital estate passed in equal shares to the heirs of Manuel and to the heirs of Cecelia."[16] As we discussed above, our ruling in *Ada* has no place in this case. Also, because Chamorro custom applies in this case, U.S. statutory precedents do not apply.

¶16 ■ Although today, by statute, such lands might be deemed as "community or marital property," in 1971, however, the Northern Mariana Islands, as a district of the Trust Territory, was not a community property jurisdiction.[17] Thus, in 1971, in the absence of a legislative mandate, the lands were deemed to be Manuel's property. When Manuel died, his property did not vest in his wife; it vested in his children. Cecilia benefitted from the custom in which her children provided for her needs for the remainder of her life. Her equal protection interest is not at issue in this probate matter today. Therefore, Manuel's children, both legitimate and illegitimate, have each acquired an equal share of Manuel's five lots since 1971.

---

[11] *Estate of Deleon Guerrero*, 1 N.M.I. 301 (1990).

[12] *Palacios v. Coleman*, 1 CR 34, 36 (D.N.M.I. 1980).

[13] Excerpts of Record at 4, 27 [citing *Deleon Guerrero, supra*, 1 N.M.I. 301: N.M.I. Const. art. I, § 6: and *Ada v. Sablan*, 1 N.M.I. 415 (1990)].

[14] *Deleon Guerrero, supra*, 1 N.M.I. 301.

---

[15] Excerpts of Record at 4.

[16] *Id.* at 8.

[17] *Blas v. Blas*, 3 TTR 99 (Tr. Div. 1966).

**2. Whether the probate court erred by granting attorney's fees and cost incurred by the administratrix in another case and charging them to the estate.**

¶17 ■ The appellants contend that the probate court abused its discretion by requiring each of them to pay a pro rata share of the administratrix's attorney's fees and cost in the *Cabrera* case. We find no abuse of discretion. "An estate is primarily liable for those reasonable expenses of administration which the court finds to have incurred for the benefit of the estate."[18] "Absent manifest error, the conclusion of a trial court should not be disturbed on appeal."[19] The Commonwealth Probate Code provides that an administrator, prior to charging an attorney's fees against an estate, shall describe the benefit to the estate conferred by the legal service rendered.[20] In the present case, the administratrix is claiming entitlement to reimbursement for attorney's fees she has expended in *Cabrera*.[21] She asserts that her intervention in that matter "preserved 20,000 square meters for the estate."[22] The appellants did not dispute this contention.[23]

¶18 The record does not reveal any manifest error on the part of the probate court. The court could legitimately conclude that the administratrix's claimed legal expenses were reasonable. Therefore, its decision will stand.

### CONCLUSION

¶19 We hereby **REVERSE** the probate court's decision on the estate distribution and **REMAND** this case for the probate court to distribute the estate, including all five land parcels, equally among the heirs of Manuel. The court's decision on attorney's fees and cost is **AFFIRMED**.

---

[18] *Estate of Barcinas, supra,* 2 N.M.I. at 449 [citing *Estate of McKeen,* 573 P.2d 936 (Colo. App. 1977)].

[19] *Id.* (citing *McKeen, supra*).

[20] "In establishing reasonable attorney's fees pursuant to § 2925(a) and § 2926 of this chapter, the personal representative and the Court shall account for . . . the benefit of the estate, and rate for such services within the Commonwealth." 8 CMC § 2926(c).

[21] Excerpts of Record at 8.

[22] *Id.*

[23] *Id.*